UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD L. CARPENTER,

       Plaintiff,

v.                                 Case No. 1:10-cv-1192

                                   HON. ROBERT HOLMES BELL

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

                               /

## REPORT AND RECOMMENDATION

       Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

       Plaintiff was born on October 18, 1950 (AR 40).[1] He completed the 9th grade (AR 78). Plaintiff alleged a disability onset date of January 1, 1999 (AR 40).[2] Plaintiff stated that he stopped working on April 24, 1998 due to an on the job injury (AR 72). He had previous employment a maintenance carpenter, carpenter and glass installer (AR 19, 73). Plaintiff identified his disabling conditions as: "knee replacement and 1 needed"; surgery on both shoulders; arthritis in hands, knees and legs; hypertension; high cholesterol; hardening of the arteries; acid reflux; breathing problems; and possible emphysema (AR 72). On April 14, 2010, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 11-21).

---

[1] Citations to the administrative record will be referenced as (AR "page #").

[2] Although plaintiff alleged a disability onset date of January 1, 1999, he did not file his application for DIB until October 23, 2007 (AR 11).

This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step. At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of January 1, 1999 and met

the insured status requirements of the Social Security Act through June 30, 2003 (AR 13). At step two, the ALJ found that through the date last insured, plaintiff suffered from severe impairments as follows: status post left rotator cuff repairs; osteoarthritis; status post left knee replacement (2003); peripheral vascular disease, status post left femoral popliteal bypass surgery (1996); and a history of high blood pressure (AR 13). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following restrictions:

> he can lift and carry 20 pounds occasionally and 10 pounds frequently; he cannot use ladders, scaffolds or ropes; he can only occasionally crawl, crouch, kneel, stoop, use ramps or stairs; he can only occasionally reach overhead; he cannot use pneumatic, torque or power tools; he cannot work in an area with concentrated exposure to extreme cold, or hazards including dangerous and unprotected machinery; he must avoid all exposure to heights.

(AR 17). The ALJ further found that plaintiff could not perform his past relevant work (AR 19).

At the fifth step, the ALJ determined that plaintiff could perform a significant number unskilled, light jobs in the national economy (AR 20-21). The ALJ went on to find that plaintiff could perform approximately 28,000 jobs in the regional economy (identified as the State of Michigan) as follows: "assembler bench" (10,000 positions); checker/packager (10,000 positions) and cleaner (8,000 positions) (AR 20). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from January 1, 1999 (the alleged onset date) through June 30, 2003 (the date last insured) (AR 21).

### III. ANALYSIS

Plaintiff has raised two issues on appeal.

>   **A.     The Commissioner has committed legal error in the evaluation of the claim requiring reversal or remand for further proceedings without regard to the "substantial evidence" standard.**

Plaintiff contends that the ALJ erred by applying the incorrect grid in determining his ability to perform work in the national economy. The grids "take account only of a claimant's 'exertional' impairment, that is 'an impairment which manifests itself by limitations in meeting the strength requirements of jobs[.]' 20 C.F.R., Part 404, Subpt. P, App. 2 § 200.00(e)." *Abbott*, 905 F.2d at 926. An ALJ may use the grids, rather than expert testimony, to show that a significant number of jobs exist in the economy when the claimant's characteristics fit the criteria of the guidelines. *Siterlet v. Secretary of Health and Human Servs.*, 823 F.2d 918, 922 (6th Cir. 1987). *See Bohr v. Bowen*, 849 F.2d 219, 221 (6th Cir. 1988) ("the grids are a shortcut that eliminate the need for calling in vocational experts").

The grids only apply to a claimant when all factors (i.e., age, work experience, physical ability and education) meet the requirements as set forth in the grids. "In general, where the characteristics of the claimant exactly match the characteristics in one of the rules, the grid determines whether significant numbers of other jobs exist for the person or whether that person is disabled." *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003). As the Sixth Circuit explained:

> The grid comes into play only when the claimant's characteristics precisely coincide with the grid. In any other situation the grid is used at most for guidance in the disability determination. When the claimant does indeed match one of the grid's patterns, then all the grid does is announce that substantial gainful work in the national economy is available for that particular individual; in other words, once a finding is made that the individual can do light work, for example, the grid operates to declare that light work is available.

*Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 535 (6th Cir. 1981). However, "where a claimant has nonexertional impairments alone or in combination with exertional

5

limitations, the ALJ must treat the grids as only a framework for decisionmaking, and must rely on other evidence to determine whether a significant number of jobs exist in the national economy that a claimant can perform." *Jordan v. Commissioner of Social Security*, 548 F.3d 417, 424 (6th Cir. 2008).

Here, plaintiff contends that the ALJ used the wrong age in applying the grids at the fifth step of the sequential process. While the ALJ correctly identified plaintiff's age as 52 on the date last insured, he also stated that plaintiff was defined "as a younger individual age 18-49, on the date last insured" and that plaintiff "subsequently changed age category to closely approaching advanced age" (AR 19). The ALJ's statement is in error. The record reflects that plaintiff was 48 years old (i.e., a younger individual) on the alleged onset date of January 1, 1999, and 52 years old (i.e., "closely approaching advanced age") on the date last insured of June 30, 2003. Despite the ALJ's incorrect statement that plaintiff was a "younger individual" on the date last insured, the ALJ ultimately applied the appropriate grids, Rules 202.18 and Rule 202.11 (AR 20). Rule 202.18 applies to a younger individual (age 18-49) with the following characteristics: maximum sustained work capability limited to light work; has a "limited or less" education ("at least literate and able to communicate in English"); and has previous experience of skilled or semiskilled work, with skills not transferable. *See* 20 C.F.R., Part 404, Subpt. P, App. 2 § 201.00(h)(1). Rule 202.11 applies to a person closely approaching advanced age (age 50 to 54) with the following characteristics: maximum sustained work capability limited to light work; has a "limited or less" education ("at least literate and able to communicate in English"); and has previous experience of skilled or semiskilled work, with skills not transferable. *See* 20 C.F.R., Part 404, Subpt. P, App. 2 § 201.00(g). Under both Rules 202.11 and 202.18, plaintiff would be found as not disabled.

Furthermore, given plaintiff's nonexertional impairments, the ALJ used the grids only as a framework, relying on the testimony of the vocational expert (VE) to establish that plaintiff could perform other work. *See generally*, *Jordan*, 548 F.3d at 424. Under these circumstances, the ALJ's error is harmless.[3] "No principle of administrative law or common sense requires [a reviewing court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989). Accordingly, plaintiff's claim regarding the ALJ's error in applying the grids should be denied.

### B. The Commissioner erred in relying upon the testimony of the vocational expert given the incorrect reliance upon mis-stated limitations of treating physicians.

Plaintiff contends that the ALJ posed a defective hypothetical question to the VE and that as a result of this defect, failed to provide substantial evidence that plaintiff can perform substantial gainful activity. *See* Plaintiff's Brief at p. 12. The court agrees with plaintiff that the ALJ's hypothetical question did not adequately address plaintiff's limited ability to use his left arm.

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the

---

[3] The court notes that the Appeals Council reached a similar conclusion on review:

"The hearing decision incorrectly reflects that you were a 'younger individual' on your date last insured, June 30, 2003 (Finding #7). The Appeals Council notes, however, that the correct Medical-Vocational Rules (202.18 and 202.11) that are applicable to your case were cited at page 10 of the hearing decision."

(AR 3).

testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Services.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Services.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals"). Because the purpose of the hypothetical question is to elicit testimony regarding a claimant's ability to perform other substantial gainful activity that exists in the national economy, the question does not need to include a listing of the claimant's medical diagnose. "[A] hypothetical question need only reference all of a claimant's limitations, without reference to the claimant's medical conditions." *Webb*, 368 F.3d at 632.

> The ALJ posed the following hypothetical question to the VE:
>
> Doctor, assume a hypothetical individual who could meet the demands of light work; should never use ladders, scaffolds or ropes; should only occasionally use ramps, stairs, stoop, kneel, crouch, crawl; should avoid concentrated exposure to extreme cold; should only occasionally do over-the-head reaching; should avoid concentrated exposure to hazards, including dangerous and unprotected machinery or heights, or I'll change that, should avoid concentrated exposure to hazards including dangerous and unprotected machinery [sic] and should avoid all exposure to heights.

(AR 868-69). Based on this hypothetical question, the VE testified that such an individual could perform 28,000 jobs, such as a bench assembler, checker/packager and cleaner (AR 868-69).

Plaintiff contends that the hypothetical question was defective, summarizing the alleged defects as follows:

> The treating physicians [sic] limitations range from an inability to perform any full time work (Dr. Dehlin) and including no lifting over five pounds, (Dr. Detrisac) and fails to include additional stated limitations [of] a five pound lifting

8

> restriction with lifting of 25 to 30 pounds **IF** he was allowed to keep his elbow at his side. (Dr. Schwaderer).  **No doctor suggests the claimant could perform any overhead work, no doctor suggested the unrestricted lifting and carrying frequently of ten pounds.  No doctor who treated the peripheral artery disease suggested the claimant could do a good deal of walking**.

Plaintiff's Brief at p. 11 (emphasis in original).

The ALJ addressed these limitations when he reviewed the opinions given by three treating physicians, Dr. Detrisac, Dr. Schwaderer and Dr. Dehlin,  The ALJ evaluated Dr. Detrisac's opinions as follows:

> As for the opinion evidence, the undersigned considered the reports and assessments from former physician Detrisac.  In a February 2001 letter, Dr. Detrisac indicated that he had last seen claimant some 16 months earlier, during October 1999.  The doctor remarked that it was reasonable to assume the claimant had left upper extremity limitations consistent with aspects of the previously mentioned July 1999 functional capacity assessment.  The doctor recommended that in terms of his left arm, the claimant should not use vibratory tools, climb ladders, perform elevated work, push over 30 pound [sic], or pull more than 45 pounds.  The doctor wrote, "no lifting, floor to overhead, of greater (sic) than 2.5 pounds, occasionally lift 5 pounds from floor to overhead."  Though the July 1999 functional capacity assessment advised some limitation with sustained horizontal reaching with the claimant's left arm, this was not adopted by Dr. Detrisac.  While Dr. Detrisac's views are accorded some weight, they are not accepted in total because they do not assess the claimant's total functionality.  Dr. Detrisac did not list any restrictions affiliated with the claimant's right upper extremity.  This is reasonable given the contemporary evidence of record, including the functional capacity assessment which specifically indicated that the claimant did not have deficits in coordination or horizontal reach with the right upper extremity; that he was able to carry upwards of 30 pounds the [sic] right upper limb; that he sustained no restrictions affiliated with grip strength, sitting or step ladder climbing (Exhibit F pp. 2-7, 15) [AR 833, 842-47].

(AR 18-19).

The ALJ evaluated Dr. Schwaderer's opinions as follows:

The undersigned assigns some, but not controlling weight, to the opinion of Dr. Schwaderer.  The orthopedist concluded that the claimant should limit lifting, repetitive and overhead activities of the left arm, and that he could lift 25-30 pounds when using both arms (Exhibit F p. 219) [AR 627].

9

(AR 19). In this regard, the court notes that Dr. Schwaderer limited plaintiff's use of his left arm to lifting to about five pounds "and that would have to be below shoulder height" (AR 627).

Finally, the ALJ evaluated Dr. Dehlin's opinions as follows:

> The undersigned ascribes limited weight to the opinions of Capital family physician Dehlin, as they relate to the claimant's condition through June 2003. In a January 2005 statement, Dr. Dehlin indicated that the claimant was unable to return to past carpentry and laborer positions, and "I consider him disabled" (Exhibit F p. 727) [AR 107]. During 2009, Dr. Dehlin listed restrictions for the claimant that were incompatible with an ability to perform full time competitive employment (e.g., can never walk; can sit and stand a total of 2.5 hours in an 8-hour workday; can never carry, bend, twist, stoop, crawl, etc.) (Exhibit F pp. 730-733) [AR 101-04]. The level of dysfunction suggested by Dr. Dehlin is not well supported objectively, and is contraindicated by substantial evidence in the record, including notations from the clinicians [sic] own practice. During November 2003 (after the expiration of the claimant's insured status), Dr. Dehlin himself cited rather benign clinical findings (e.g., claimant demonstrated a normal and unaided gait and station; joint movements were within normal limits, and no musculoskeletal tenderness was present; normal muscle strength, tone, sensory reflex and cranial nerve functions; appeared alert, well developed and well nourished; normal heart sounds and intact pulsation; warm and dry skin; no edematous changes, clubbing, edema, etc. (Exhibit F pp. 524-526) [AR 320-22].

(AR 19).

### 1. Lifting limitations

The court agrees with plaintiff that the hypothetical question does not properly address his particular lifting limitations. As summarized by the ALJ, the medical records reflect that plaintiff can barely use his left arm (i.e., he can lift about 5 pounds), but that he can apparently compensate by using his right arm (i.e., he can lift about 30 pounds with both arms). These limitations are not addressed in the hypothetical question, which simply states that plaintiff can perform light work (i.e., "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," *see* 20 C.F.R. § 404.1567(b)). Based on this record, the hypothetical question should have addressed the acknowledged limitations to plaintiff's left arm as

those limitations affect his ability to perform light work. This is not a harmless error. It is quite conceivable that the lifting restrictions in plaintiff's left arm could reduce the number of jobs identified by the VE. Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate plaintiff's ability to perform light work, with special attention given to plaintiff's limited ability to lift with his left arm.

### 2. Limitations with respect to peripheral artery disease and other conditions

The court does not find any error with respect to the ALJ's evaluation of plaintiff's other conditions, such peripheral artery disease, back pain and arthritis. The ALJ's hypothetical question addressed these issues by assuming that the individual had limited a limited ability to move and manipulate his body (e.g., the individual should never use ladders, scaffolds or ropes, should only occasionally use ramps, stairs, stoop, kneel, crouch and crawl, etc.) (AR 868-69). Although Dr. Dehlin was a treating physician, the ALJ was not bound by the doctor's conclusion that plaintiff was unable to work. *See* 20 C.F.R. § 404.1527(e)(1) ( "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that you are disabled' ). Such statements, by even a treating physician, constitute a legal conclusion that is not binding on the Commissioner. *Crisp v. Secretary of Health and Human Servs.*, 790 F.2d. 450, 452 (6th Cir. 1986). The determination of disability is the prerogative of the Commissioner, not the treating physician. *See Houston v. Secretary of Health and Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984). Accordingly, plaintiff's claim that the hypothetical question did not adequately address his peripheral artery disease, arthritis and other conditions identified by Dr. Dehlin should be denied.

**IV.     Recommendation**

Accordingly, I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner should re-evaluate plaintiff's ability to perform other work at step five of the sequential process, with special attention given to plaintiff's limited ability to lift with his left arm.


Dated:  January 11, 2012	/s/ Hugh W. Brenneman, Jr.
	HUGH W. BRENNEMAN, JR.
	United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).